Filed 9/23/25  P. v. Price CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DYLLAN ANTHONY PRICE,<br><br>    Defendant and Appellant. | D086349<br><br><br><br>(Super. Ct. No. FSB1501164) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Michael A. Smith, Judge.  Affirmed.

William J. Capriola, under appointment of the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Christine Y. Friedman and Tyler L. Krentz, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Dyllan Anthony Price of one count of second degree murder (Pen. Code,[1] § 187, subd. (a)) and one count of felon in possession of a firearm (§ 29800, subd. (a)(1)). Price was sentenced to a total term of 40 years to life.

On appeal, Price contends the trial court erred in refusing to give a jury instruction on the lesser included offense of voluntary manslaughter based on sudden quarrel or heat of passion. Because there was not substantial evidence that Price acted in the heat of passion, the trial court properly refused to give the instruction, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2015, Price and several other individuals were socializing in a neighborhood in San Bernardino. David Love walked by. Price followed him and called out to him. Love turned around and the two had a conversation. After two or three minutes, the conversation escalated into an argument. It appeared to one witness that all of a sudden Price "went ballistic" on Love, cursing and yelling at him. Price was "the aggressor," another witness observed. Love and Price began yelling at each other.

Love turned and tried to walk away from Price. It looked to one witness that Price was mad about something and Love was not really responding. To another observer it seemed Love was trying to get away and did not want to talk with Price. But Price followed Love and continued to argue with him. Love turned back around to face Price. The two men faced each other, about six inches apart.

Price had his hand in his pocket during the argument. As the two men continued to argue, a witness heard the sound of a gun cocking. There was a

_____

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

brief scuffle, with both men pushing or grabbing at each other. According to Price, Love was turning and pulling something out of his clothes. A witness said Love was instead trying to grab the gun from Price's pocket. In response to the movement by Love, Price pushed Love away. Price pulled out his gun and started shooting at Love. His first shot caused Love to "ball[ ] up," so that Love was bent over at the waist. Price kept shooting. After the first two gunshots, there was a short pause, then rapid gunfire. Altogether Price fired five times.

Love was shot three times: once in the back of the head, once in the back of the right arm, and once in the front of the left arm. The gunshot wound to the back of the head was the cause of death. The moment the bullet entered Love's head, he would have immediately become unconscious, and, if he were standing, he would have fallen. The autopsy indicated all of the shots that hit Love were fired from beyond four feet away.

Love was transported to the hospital and pronounced dead a few hours later. No firearm was found on or near him at the scene.

At trial, counsel requested a voluntary manslaughter jury instruction based on heat of passion. The trial court denied the request, finding no evidence of provocation by Love. The court granted defense requests to instruct the jury on self-defense, imperfect self-defense, and provocation that reduces murder from first degree to second degree.

The jury convicted appellant of second degree murder, a lesser included offense of count 1, and found true the alleged firearm enhancement. The jurors also convicted Price of possession of a firearm by a prohibited person.

DISCUSSION

Price contends the trial court erred by declining to instruct the jury on voluntary manslaughter based on heat of passion. He contends Love's attempt to grab his own, or Price's, gun while they were locked in a heated argument produced in Price a strong passion, or fear and panic. He argues this intense emotional response obscured his reasoning and justified a heat of passion instruction.

A court must instruct on the lesser included offense of manslaughter based on heat of passion " 'only if there is substantial evidence from which a jury could reasonably conclude that the defendant committed the lesser, uncharged offense, but not the greater, charged offense.' " (*People v. Nelson* (2016) 1 Cal.5th 513, 538 (*Nelson*).) A trial court properly refuses an instruction requested by the defendant if it is not supported by substantial evidence. (*People v. Moon* (2005) 37 Cal.4th 1, 30.)

Based on our independent review (*Nelson, supra*, 1 Cal.5th at p. 538), we find no substantial evidence supported an instruction of voluntary manslaughter based on heat of passion.

Murder is the intentional and unlawful killing of a human being with malice aforethought. (§ 187, subd. (a); *Nelson, supra*, 1 Cal.5th at p. 538.) Manslaughter, a lesser included offense of murder, is the intentional and unlawful killing of a human being without malice. (*Nelson*, at p. 538.) Malice can be negated by heat of passion. (*Ibid*.) "Heat of passion arises if, ' "at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from

4

judgment." ' [Citation.] Heat of passion, then, is a state of mind caused by legally sufficient provocation that causes a person to act, not out of rational thought but out of unconsidered reaction to the provocation." (*People v. Beltran* (2013) 56 Cal.4th 935, 942 (*Beltran*).)

Heat of passion includes both subjective and objective components. (*People v. Moye* (2009) 47 Cal.4th 537, 549–550 (*Moye*).) To satisfy the objective component, the defendant's heat of passion must be the result of "sufficient provocation," caused or initiated by the victim, that "would cause an ordinarily reasonable person of average disposition to act rashly." (*Id.* at pp. 549–550.) This objective component prevents the defendant from "set[ting] up his own standard of conduct" to justify his actions. (*People v. Steele* (2002) 27 Cal.4th 1230, 1252.)

The evidence here reflects that Price instigated the confrontation with Love. Price armed himself with a gun, followed Love, called out to him, and engaged him in conversation. Love tried to leave, but Price pulled Love back into the argument and "went ballistic," yelling and cursing at Love. Price then audibly cocked his gun while he was face-to-face with Love, clearly signaling he was armed and preparing to use his firearm as the conversation escalated. Even if Love made the first physical move towards Price, Price instigated the encounter. (See *People v. Johnston* (2003) 113 Cal.App.4th 1299, 1311 [rejecting theory that there was provocation by the victim where defendant armed himself with a knife, went to the victim's house, loudly cursed victim's mother and sister, and challenged victim to a fight in which the victim struck the first blow].).

5

Love's move to grab something—either his own gun, as Price claimed,[2] or Price's gun—was a predictable response to the situation Price created. (See *People v. Enraca* (2012) 53 Cal.4th 735, 760 ["Predictable and reasonable conduct by a victim resisting felonious assault is not sufficient provocation to merit an instruction on voluntary manslaughter."]; *People v. Souza* (2012) 54 Cal.4th 90, 117 [victim's standing up from the couch and reaching for one of three armed unknown men who had burst into the victim's home was a "predictable and reasonable conduct by a victim resisting felonious assault," and not provocation sufficient to merit a heat-of-passion instruction"].) Love's reasonable and predictable reaction to Price's provocation cannot be used by Price to reduce his own culpability. "A defendant may not provoke a fight, become the aggressor, and, without first seeking to withdraw from the conflict, kill an adversary and expect to reduce the crime to manslaughter by merely asserting that it was accomplished upon a sudden quarrel or in the heat of passion." (*People v. Oropeza* (2007) 151 Cal.App.4th 73, 83.) We agree with the trial court there was not sufficient evidence of provocation to meet the objective component for the heat of passion instruction.

Further, the subjective component for heat of passion requires that the defendant killed while under " 'the actual influence of a strong passion' " induced by legally sufficient provocation. (*Moye, supra*, 47 Cal.4th at p. 550.) Heat of passion requires that the provocation caused "an emotion so intense that an ordinary person would simply *react*, without reflection" (*Beltran, supra*, 56 Cal.4th at p. 949) [emphasis in original], and can include

---

2    The record is conflicting as to whether, during the scuffle, Love reached into his own clothes, as if he were reaching for his own gun, or reached forward to grab Price's gun. Price told his brother that he saw Love reaching into his own clothes, and the brother later repeated Price's version of events to a police detective. A witness said she saw Love reaching forward to grab Price's gun.

" ' " ' "[v]iolent, intense, high-wrought or enthusiastic emotion." ' " ' " (*Id.* at p. 950.)

Even if the record suggests Price was subjectively acting under some extreme emotion, it was not caused by Love. Price first contends the intense reaction was the "heat of passion arising from Love's attempt to grab his gun" or other strong emotion arising from their heated argument. But it was Price who "went ballistic" on Love. Love tried to walk away and disengage. The law does not allow Price to work himself into a frenzied state, then claim that this caused him to kill without rational thought. Moreover, the evidence from Price and others is that Price pushed Love away when he thought Love was reaching for a gun—a reasonable response and one that does not suggest intense passion overcame Price's judgment.

Price argues in the alternative that he acted out of intense "fear and panic" caused by Love reaching for a gun. But Price did not testify that he was afraid and panicked, and the evidence belies such a conclusion. Price's first nonlethal shot disabled Love to the point Love was doubled over and clutching at his stomach. Price paused, which gave Price time to withdraw from the fight. But instead, Price "rapidly" fired more shots from at least four feet away. Price did not release a wild flurry of untargeted shots in fear and panic. (Cf. *People v. Dominguez* (2021) 66 Cal.App.5th 163, 180 (*Dominguez*) [evidence the defendants shot 21 bullets in 3.7 seconds— "significantly faster than would ordinarily be expected to aim and shoot"— spraying bullets at four individuals, and hitting two and killing one, was consistent with "a panic shooting"].) Two of the three shots that hit Love were fired when Love was already facing away from Price, including the

lethal shot to the back of Love's head. Rather than a fear response, this was a display of malice as the jury concluded.[3]

In sum, the court correctly determined that substantial evidence did not support a heat of passion claim. The court properly denied Price's request for a voluntary manslaughter instruction based on that theory.

DISPOSITION

We affirm the judgment.

RUBIN, J.

WE CONCUR:

DATO, Acting P. J.

DO, J.

---

3　The cases Price relies on for the proposition that fear and panic could arouse heat of passion are distinguishable from the facts presented at Price's trial. (See *People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1139–1140 [where the defendant was surrounded by victim's friends, victim escalated the fight with the defendant, and defendant claimed he saw victim raise a semiautomatic firearm at defendant, victim's act of clenching fists and lunging at victim was a provocation arousing fear and panic in defendant sufficient for a heat-of-passion instruction]; *Dominguez, supra*, 66 Cal.App.5th at p. 174 [defendants' testimony they were panicked and scared when known a gang member reached for his waistband, and they both started shooting with eyes closed, was substantial evidence of defendants' fear and panic].)